UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JACOB WALLER,
        Plaintiff,

vs.                                                    Case No.: 1:21cv196/AW/ZCB

JAMES KIGHT, et al.,
        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff has sued six corrections officers with the Florida Department of Corrections.  They are James Kight, John Lord, John Doe I, John Doe II, John Doe III, and R. White.  Plaintiff has also sued a nurse, S. Cooper.  Plaintiff claims Defendants Kight, Lord, Doe I, Cooper, and White violated the Eighth Amendment by acting with deliberate indifference to his serious medical need.  He claims Defendants Kight, Lord, Doe II, Doe III, and White violated the Eighth Amendment by using excessive force.  Plaintiff also alleges Defendants Kight and Lord violated the First Amendment by retaliating against him for engaging in protected speech.

Defendants Kight, White, and Lord—the only Defendants who have been served and entered an appearance—have filed a motion for partial summary

1

judgment.[1]  (Doc. 33).  They seek summary judgment on all claims against them, except Plaintiff's excessive force claim against Defendants Kight and Lord.  Despite several opportunities, Plaintiff has not responded to the motion for summary judgment.  (Docs. 37, 38, 41).  For the reasons below, Defendants Kight, White, and Lord's motion for partial summary judgment should be granted.

## I.    Factual Background[2]

On November 21, 2017, Plaintiff was an inmate at Cross City Correctional Institution.  (Doc. 7 at 7).  At approximately 8:00 a.m., Plaintiff had a seizure in his cell.  (*Id.*).  After regaining consciousness, Plaintiff left his cell to seek medical attention.  (*Id.*).  On his way, Plaintiff encountered Defendants Kight and Doe I. (*Id.*).  Plaintiff told them about the seizure, and he requested medical attention.  (*Id.*). Defendant Kight told Plaintiff to sit down on a bench while Defendant Doe I

---

[1] Defendants have also filed a motion to dismiss, which made the same arguments. (Doc. 26).

[2] The facts discussed are drawn from Plaintiff's amended complaint (Doc. 7) and the evidence in the summary judgment record that may be considered at this stage.  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (holding that only sworn statements or statements qualifying under 28 U.S.C. § 1746 may be considered at the summary judgment stage).  Where the parties offer conflicting accounts, the Court has "set forth the facts, drawn from the evidence presented, in the light most favorable to" the nonmoving party.  *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005).  Matters stated as "facts" for summary judgment purposes may, therefore, not ultimately be the true facts.  *Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

supervised him.  (*Id.*).  Plaintiff then had another seizure.  (*Id.*).  It does not appear Defendant Doe I witnessed the seizure.  (*Id.*).

When Plaintiff came out of the seizure, he went to get water.  (*Id.*).  He then went to the shower.  (*Id.* at 8).  Plaintiff claims he awoke several moments later on the shower floor "with water raining down and Defendant Doe I standing in [the] doorway."  (*Id.*).  Plaintiff got up and began "doing exercises so as to keep from passing out." (*Id.*).  After Plaintiff was questioned by staff, Defendant Kight ordered Plaintiff to return to his cell.  (*Id.*).  Once there, Plaintiff got dressed and sat on his bunk.  (*Id.*).  Plaintiff again requested medical attention for his seizure.  (*Id.*).

Plaintiff then regurgitated and spit in the toilet bowl.  (*Id.* at 9).  Defendant Kight stated to Plaintiff's cellmate, "You want me to turn my back, and you can handle that?"  (*Id.*).  Plaintiff interpreted that as Defendant Kight telling his cellmate he could physically harm Plaintiff.  (*Id.*).  Plaintiff responded to Defendant Kight by stating, "He doesn't want any problems, and neither should you.  Please, just call medical."  (*Id.*).  Plaintiff alleges Defendant Kight then became aggressive and restrained Plaintiff.  (*Id.*).  Next, Defendants Kight and Lord escorted Plaintiff to the officer's station and threatened him with violence.  (*Id.*).  Plaintiff continued to "plead" for medical help.  (*Id.*).

Once at the officer's station, they were met by Defendant White.  (*Id.* at 10).  Defendants Kight, Lord, and White conversed while Plaintiff stood outside the office

3

with another staff member. (*Id.*). Plaintiff requested that the staff member provide him with medical help. (*Id.*). Defendants Kight, Lord, and White then exited the officer's station and told Plaintiff he was being placed in confinement to await a disciplinary report for disorderly conduct. (*Id.*; Doc. 33-1 at 1). Plaintiff continued to plead for medical help and said that confinement would only allow Defendants Kight and Lord to carry out their physical threats. (Doc. 7 at 10). Defendant White responded by saying "I don't want to hear it!" (*Id.*).

Defendants Kight and Lord then escorted Plaintiff to medical for a pre-confinement exam. (*Id.*; *see also* Doc. 33 at 6). Upon arrival at the medical building, Plaintiff was met by a nurse (Defendant Cooper). (Doc. 7 at 10). Defendant Cooper began the exam while Defendants Kight and Lord watched and continued their threats. (*Id.* at 11). After the exam, Defendants Kight and Lord escorted Plaintiff down the medical hall and told him to wait outside the triage office. (*Id.*). There, Plaintiff had another seizure. (*Id.*). He awoke to shouts from staff to "get up." (*Id.*). Plaintiff was placed in a chair in the triage office where he was then questioned by Defendant Cooper. (*Id.*). The threats by Defendants Kight and Lord continued throughout Defendant Cooper's questioning. (*Id.*).

After Defendant Cooper questioned Plaintiff, Defendants Kight and Lord prepared to escort him to confinement. (*Id.*). Plaintiff braced himself in his seat by planting his feet on the floor and pushing his head against the shelf. (*Id.*; Doc. 33 at

6).   Defendants Kight and Lord "forcefully ripped" Plaintiff from his seat and "tousled him around." (Doc. 7 at 11).  Defendant Cooper "fled from [the] office." (*Id.*).

As Defendants Kight and Lord were escorting Plaintiff, the three entered a hallway that was off camera and out of sight of others.  (*Id.*).  Plaintiff claims Defendants Kight and Lord then slammed him to the ground.  (*Id.* at 12).  And Defendant Kight punched Plaintiff in the left jaw, while Defendant Lord struck Plaintiff in the nose.  (*Id.*).  Plaintiff blacked out.  (*Id.*).  When he came to, he was being "continuously struck" by Defendants Kight and Lord.  (*Id.*).  Plaintiff was unable to breathe through his nose and had blood running into his eye.  (*Id.*). Defendant Kight called in a "use-of-force," while Defendant Lord pinned Plaintiff down.  (*Id.*).

Defendants Doe II and Doe III arrived in response to Defendant Kight's call. (*Id.*).  They shackled Plaintiff.  (*Id.*).  Defendants Doe II and Doe III picked Plaintiff up from the floor and held him by the arms.  (*Id.*).  Then they escorted Plaintiff through the rear entrance of medical.  (*Id.*).

Defendant White, who was in medical at that time, instructed Defendants Doe II and Doe III to take Plaintiff to confinement.  (*Id.* at 13).  Defendants Doe II and Doe III took Plaintiff into the shower and slammed his body against the wall, which caused his chin to split open.  (*Id.*; *see also* Doc. 33, Ex. E (handheld video)).

Plaintiff's restraints were then removed, and he was ordered to strip down. (Doc. 7 at 13). Plaintiff, confined to his shower stall, proceeded to climb the stall door, yell at officers, and engage in other disorderly conduct for approximately 45 minutes. (Doc. 33, Ex. E). After a discussion between Plaintiff and Defendant White, Plaintiff got dressed and Defendant Cooper cleaned and dressed Plaintiff's wounds. (Doc. 7 at 13). Defendant Cooper documented Plaintiff's injuries and scheduled x-rays. (*Id.*). Plaintiff again complained of his seizures to Defendant Cooper. (*Id.*). Plaintiff was cuffed and placed back in his cell. (*Id.*). Plaintiff was never given seizure medication on November 21, 2017. (*Id.*).

Plaintiff received disciplinary reports for disorderly conduct based on the event on November 21, 2017. (*Id.*; *see also* Doc. 33-2). He claims these reports were fabricated. (Doc. 7 at 14). Plaintiff pleaded "no contest" to the charges, but claims he was "coerced" into doing so. (*Id.*). Plaintiff appealed the disciplinary reports and filed several grievances regarding the incident on November 21, 2017. (*Id.*). He claims that he was never given any medical care after filing an appeal and grievances, despite his "continuous[] attempt[s] to acquire help." (*Id.*).

## II.    Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the "evidence is

6

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* When deciding whether to grant summary judgment, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-movant." *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988); Fed. R. Civ. P. 56(c)(1)(A).

At bottom, the summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. When answering that question, courts view the evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But the nonmoving party bears the burden of coming forward with sufficient evidence on each element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A mere "scintilla" of evidence is insufficient to meet that burden. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004). Likewise, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). At the summary judgment stage, the judge is "not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Although Plaintiff has failed to respond to Defendants' motion for partial summary judgment, the Court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). Where a party fails to respond to a motion for summary judgment, the Court may consider the facts as presented by the movant "undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (e)(3); *see also Urdaneta v. Wells Fargo Bank NA*, 734 F. App'x 701, 704 (11th Cir. 2018) (applying Rule 56(e)(2) and (3) in a case where the plaintiff failed to respond to a motion for summary judgment).

### A. Plaintiff's official capacity claims against Defendants Kight, Lord, and White are barred by sovereign immunity.

Plaintiff's amended complaint sues Defendants Kight, Lord, and White in their official (as well as individual) capacities. Summary judgment is warranted on the official capacity claims due to sovereign immunity. A state is entitled to sovereign immunity and may not be sued for damages unless there has been an explicit waiver or congressional abrogation. *Kentucky v. Graham*, 473 U.S. 159,

169 (1985). This immunity "remains in effect when State officials are sued for damages in their official capacity." *Id.* (citation omitted); *see also Henry v. Florida Bar*, 701 F. App'x 878, 881 (11th Cir. 2017) ("The individual defendants are likewise immune as state officials from [the plaintiff's] claims against them in their official capacities for monetary damages.").

Here, Defendants Kight, Lord, and White are state employees who are being sued in their official capacities for damages. Because such an action against them is effectively an action against the State of Florida, sovereign immunity applies. Plaintiff has identified neither an explicit waiver by Florida nor an act of Congress that abrogated Florida's sovereign immunity for the type of claims raised in Plaintiff's amended complaint. Plaintiff, therefore, cannot maintain an official capacity action for damages against Defendants Kight, Lord, and White. Thus, they are entitled to summary judgment on the official capacity claims set forth in the amended complaint.

## B. Plaintiff has not established a First Amendment claim against Defendants Kight and Lord.

Plaintiff alleges that Defendants Kight and Lord violated the First Amendment by threatening him with physical violence. (Doc. 7 at 16). To the extent that Plaintiff is claiming Defendants Kight and Lord violated the Constitution by threatening him, that claim is not cognizable. It is well settled that derogatory, demeaning, profane, threatening, or abusive comments made by an officer to an

inmate do not rise to the level of a constitutional violation. *See Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (finding verbal taunts directed at an inmate, even if they are distressing, do not deprive the inmate of constitutional rights); *see also Hernandez v. Florida Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) ("[A]llegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim"); *Shiflet v. Cornell*, 933 F. Supp. 1549, 1556 (M.D. Fla. 1996) ("Plaintiff's allegations constitute nothing more than a claim of verbal harassment which is not cognizable under § 1983."). Thus, Plaintiff cannot succeed on a claim for a constitutional violation that is based on verbal threats.

To the extent Plaintiff is claiming that Defendants Kight and Lord violated the First Amendment by retaliating against him for "utilizing his free speech" (Doc. 7 at 16), the claim lacks merit. To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements: (1) his speech was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (citation omitted).

From the information in the record, no reasonable jury could find that Plaintiff has established those elements. He arguably could satisfy the first element, but he

clearly cannot satisfy the remaining two.  Looking to the second element, Plaintiff has failed to show that Defendants Kight and Lord engaged in conduct that adversely affected Plaintiff's protected speech.  Indeed, the amended complaint shows that (despite the alleged conduct by Defendants Kight and Lord) Plaintiff continued to request assistance, he expressed his concerns with his treatment, and he filed grievances regarding the incident.  It does not appear in any way as though Defendants Kight and Lord suppressed Plaintiff's right to free speech.  Finally, Plaintiff has failed to establish a causal connection between his exercise of his First Amendment rights and the actions allegedly undertaken by Defendants Kight and Lord.  He has made nothing but conclusory assertions that Defendants Kight and Lord acted out of retaliation for Plaintiff engaging in protected First Amendment activity.[3]  There is no evidence in the record from which a reasonable jury could find the existence of the required causal connection.  Because Plaintiff has not come forward with sufficient evidence from which a reasonable jury could find the

---

[3] To the extent Plaintiff brings a First Amendment retaliation claim based on the allegedly false disciplinary reports by Defendants Kight and Lord, Plaintiff's claim fails as a matter of law.  (Doc. 7 at 14, 16).  A prisoner "cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process."  *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011).  Here, Plaintiff admits that he pleaded "no contest" to the disciplinary charges.  (Doc. 7 at 14).  Plaintiff's assertion that he was "coerced" into pleading "no contest" is conclusory and unsupported by facts contained in the record.

required elements of a First Amendment retaliation claim, Defendants Kight and Lord are entitled to summary judgment on that claim.

### C.    No reasonable jury could find that Defendants Kight, Lord, and White were deliberately indifferent to Plaintiff's serious medical needs.

Plaintiff also alleges that Defendants Kight, Lord, and White violated the Eighth Amendment by acting with deliberate indifference to his serious medical needs. The basis for Plaintiff's claim is that he told Defendants Kight, Lord, and White that he had a seizure, and they did not take him for medical treatment immediately. Defendants Kight, Lord, and White argue summary judgment is appropriate on this claim for two reasons: (1) the record fails to show that Defendants Kight, Lord, and White were subjectively aware of Plaintiff's seizures; and (2) Plaintiff has failed to provide any medical evidence showing that any delay in receiving treatment exacerbated his injuries. (Doc. 33 at 14-17). The Court will address each argument below.

The Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has held that it is "cruel and unusual punishment" for prison officials to act with "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). That means prison officials are obligated to provide prisoners with "minimally adequate medical care." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). The deliberate indifference standard is much higher than simple negligence or

medical malpractice. *Id*. at 1505. Indeed, the deliberate indifference standard is only met if medical care is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. at 1505-06 (cleaned up).

To prevail on a deliberate indifference claim, a plaintiff must satisfy two prongs—one objective, one subjective. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Satisfying the objective prong requires a plaintiff to show an "objectively serious medical need." *Keohane v. Florida Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (cleaned up). A medical need is objectively serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm." *Id*. (cleaned up). Once a serious medical need is established, a plaintiff must satisfy the subjective prong by showing that "the prison official acted with deliberate indifference to that need." *Ciccone v. Sapp*, 238 F. App'x 487, 489 (11th Cir. 2007) (internal quotations omitted). To make that showing, a plaintiff must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; [and] (3) by conduct that is more than mere negligence." *Id*. (internal quotations omitted). The plaintiff's burden of establishing deliberate indifference is "steep." *Keohane*, 952 F.3d at 1266.

A correctional officer's intentional denial or delay of medical care for obviously serious conditions can constitute deliberate indifference under the Eighth Amendment. *Estelle*, 429 U.S. at 104-105. "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002). The Eleventh Circuit has provided the following guidance in assessing deliberate indifference claims based on delayed medical treatment:

> The "seriousness" of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "[t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay." Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Id.* at 1188-89 (cleaned up).

Here, no reasonable jury could conclude that Plaintiff has met his burden of showing deliberate indifference by Defendants Kight, Lord, and White. First, there

14

is nothing in the record showing that Defendants Kight, Lord, and White were subjectively aware that Plaintiff's self-reported seizure posed a serious risk to his health if he did not receive immediate medical attention. First, there is no evidence that these particular corrections officers knew that Plaintiff had a history of seizures. Plaintiff has not provided any records or other information to show that Defendants Kight, Lord, and White had seen Plaintiff's medical records, had conversations with medical staff regarding his condition, had previously seen Plaintiff have a seizure, or had otherwise gained knowledge of Plaintiff's seizure condition.[4] *See generally Williams v. Lewis*, No. 4:16-cv-258, 2018 WL 3242019, at *3 (E.D. Mo. July 3, 2018) (granting summary judgment when there was "no evidence of record that demonstrate[d] or permit[ed] a reasonable inference" that the defendants "knew about Plaintiff's history of seizures or were personally involved in his care and treatment"). Moreover, Plaintiff has provided no evidence to establish that Defendants Kight, Lord, and White were aware that Plaintiff's seizure required immediate medical attention. The circumstances actually suggest otherwise— Plaintiff was on his feet, drinking water, walking on his own, "doing exercises,"

---

[4] Indeed, Plaintiff has submitted no evidence, beyond his own statements, to support the claim that he was in fact suffering from seizures. *See Thomas v. City of Jacksonville*, 731 F. App'x 877, 882 (11th Cir. 2018) (granting qualified immunity to defendants as to plaintiff's deliberate indifference claims when "Plaintiffs fail[ed] to provide any evidence beyond conclusory, lay speculation . . . that [plaintiff] was in fact having a seizure").

talking, and displaying plenty of energy. (Doc. 7 at 7-8). Indeed, the video evidence shows Plaintiff climbing and banging on the shower door after being escorted there by Defendants. (Doc. 33, Ex. E). In sum, Plaintiff did not exhibit that his "medical needs [were] obvious" or that "they involve[d] life-threatening conditions or situations where it [was] apparent that delay would detrimentally exacerbate the medical problem." *Hill*, 40 F.3d at 1187.

Even if the record were sufficient to show Defendants Kight, Lord, and White were subjectively aware of Plaintiff's seizure condition and his need for immediate medical attention, Plaintiff has failed to come forward with evidence sufficient for a reasonable jury to conclude that any delay in receiving medical care worsened Plaintiff's medical condition. As the Eleventh Circuit has explained, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Thomas*, 731 F. App'x at 881 (internal quotations omitted); *see also McDaniels v. Lee*, 405 F. App'x 456, 458 (11th Cir. 2010) (explaining that "[t]o survive summary judgment, a plaintiff must show that the delay attributable to the defendant's indifference likely caused the plaintiff's injury"). Plaintiff has provided no medical evidence to show that the delay in taking Plaintiff to see the nurse detrimentally impacted Plaintiff's health. It bears mentioning that we are not talking about an overly lengthy delay here. Within a

16

relatively short period of time, Plaintiff was taken to a nurse for evaluation.  And the nurse determined Plaintiff did not require further medical treatment.  Plaintiff, therefore, has failed to show how his medical condition would have been different had Defendants taken him to see the nurse sooner.  *See, e.g.*, *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (affirming summary judgment in favor of prison officials who delayed treating an inmate's heart attack where the inmate failed to offer evidence "establishing that any delay in treatment had a detrimental effect").  Because no reasonable jury could find that Defendants Kight, Lord, and White were deliberately indifferent to Plaintiff's serious medical need, they are entitled to summary judgment on that claim.

### D.    No reasonable jury could find that Defendant White used excessive force against Plaintiff.

The amended complaint claims Defendants Kight, Lord, Doe II, Doe III, and White used excessive force in violation of the Eighth Amendment.  (Doc. 7 at 16). Defendant White has moved for summary judgment on the excessive force claim. The Court agrees that Defendant White is entitled to summary judgment on this claim.

Defendant White is only mentioned briefly in Plaintiff's complaint.  (Doc. 7 at 9, 13; *see also* Doc. 33-4 at 17, 26, 29-30).  Defendant White is first mentioned as being at the officer's station when Defendants Kight and Lord escorted Plaintiff there.  (Doc. 7 at 9; Doc. 33-4 at 17-18).  When Plaintiff continued to request medical

17

attention, Plaintiff alleges Defendant White replied, "I don't want to hear it!" and walked away. (Doc. 7 at 10). Defendant White next appears when Defendants Doe II and Doe III escorted Plaintiff to the medical unit. (*Id.*). At that time, Defendant White allegedly ignored Plaintiff's requests for help and instructed Defendants Doe II and Doe III to take him to confinement. (*Id.*).

At no point does Plaintiff claim that Defendant White personally used force against him. Thus, Plaintiff's claim against Defendant White cannot go forward as a pure excessive force claim because Defendant White used no force—excessive or otherwise. But an officer who is present and fails to intervene in another officer's use of excessive force may be held liable under the Eighth Amendment. *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007). This failure to intervene theory is what Plaintiff appears to be advancing against Defendant White.

To be held liable for violating the Eighth Amendment under a failure to intervene theory, it must be shown that a defendant was present when excessive force was used. *See Williams v. Rickman*, 759 F. App'x 849, 853 (11th Cir. 2019) (holding defendant could not be held liable for failure to intervene when the undisputed relevant facts indicated he was not present when the use of excessive force occurred). Here, Plaintiff's amended complaint does not place Defendant White at the scene of any use of force by Defendants Kight and Lord. And Defendant White has submitted a sworn declaration along with his motion for summary judgment. (Doc. 33-1). In

18

the declaration, Defendant White states that he was not present for the use of force by Defendants Lord and Kight. (*Id.*). Given this undisputed evidence that Defendant White was not present when Defendants Kight and Lord used force, he cannot be held liable for failure to intervene.

As for the alleged use of excessive force by Defendants Doe II and Doe III, Defendants have submitted video evidence capturing that use of force. (Doc. 33, Ex. E). It appears that use of force by Doe II and Doe III may have partially occurred in Defendant White's presence. The Court has reviewed the video evidence, and the use of force was so quick that Defendant White would not have had time to intervene. Thus, he cannot be held liable for failure to intervene. *See Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) (holding that officer cannot be held liable for failing to intervene when another officer used excessive force and the "attack came quickly and was over in a matter of seconds"); *see also Noel v. Arias*, 460 F. Supp. 3d 1318, 1328 (S.D. Fla. 2020) (granting summary judgment on failure to intervene claim because the defendant "could not intervene" because the incident "happened very quickly and [the defendant] did not have time to intervene").

Plaintiff's amended complaint states that Defendant White should be held responsible under the Eighth Amendment because he was the supervising officer. But it "is well established in this Circuit that supervisory officials are not liable under

§ 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

To the extent Plaintiff is claiming that Defendant White failed to protect him from being harmed by the other officers, his claim also fails. "The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (cleaned up). "A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Id.* at 1099 (cleaned up). But, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).

Plaintiff's allegation, liberally construed, is that Defendant White was subjectively aware of the risk that he would be assaulted by the others because Plaintiff reported that Defendants Kight and Lord were "threatening him." (Doc. 7 at 10). This allegation is the type of "generalized awareness of risk" that is insufficient to satisfy the subjective awareness requirement. *See Perdue v. Oberschlake*, No. 4:20cv103, 2021 WL 4268289, at *8 (N.D. Fla. Aug. 10, 2021) (granting summary judgment on failure-to-protect claim because it was "based on

Plaintiff's conclusory allegation that an officer told Plaintiff he was going to 'get it'"). Moreover, there is no evidence in the record to show that Defendant White acted with more than negligence when he failed to take action based on Plaintiff's statements that he had been threatened. No reasonable jury could find that Defendant White's conduct was so egregious that it "offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." *Brown*, 894 F.2d at 1537. Defendant White, therefore, is entitled to summary judgment on Plaintiff's claim that he violated the Eighth Amendment.

### III.    Conclusion

For the reasons above, the undersigned respectfully **RECOMMENDS** that:

1.    Defendants Kight, Lord, and White's Motion for Partial Summary Judgment (Doc. 33) be **GRANTED**;

2.    Defendants Kight, Lord, and White's Motion to Dismiss (Doc. 26) be **DENIED as moot**; and

3.    Defendant White be terminated as a party to this action.[5]

At Pensacola, Florida, this 24th day of January 2023.

/s/ *Zachary C. Bolitho*

---

[5] There are no claims against Defendant White that will not be resolved by granting the motion for partial summary judgment. As for Defendants Kight and Lord, Plaintiff's Eighth Amendment excessive force claims against them remain. The motion for partial summary judgment did not address those claims, and they will proceed to trial.

Zachary C. Bolitho
United States Magistrate Judge

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. **Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.** An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.